UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SCOTT RICKARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:16-cv-438-WTL-MJD |
| | ) |
| ADMINISTRATOR FARRAH BUNCH, | ) |
| WILLIAM SPANENBERG, | ) |
| PHARMACORR, MARK YOUNG, | ) |
| TRINA NICKERSON, | ) |
| CASSANDRA FELIX, CORIZON, | ) |
| | ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

**I. Background**

In this civil action, plaintiff Scott Rickard, an Indiana prisoner currently incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley"), alleges that the defendants were deliberately indifferent in their treatment of his terminal heart condition while he was an inmate at the Putnamville Correctional Facility ("Putnamville").

Presently pending before the Court is the motion for summary judgment filed by defendants on May 22, 2017. Dkt. No. 16. Although two defendants, Farrah Bunch and Trina Nickerson, have not appeared in the action, the motion for summary judgment is applicable as to them as well as the moving defendants. *See Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition

to the motion."). The plaintiff filed a response in opposition on June 1, 2017. The defendants replied on June 15, 2017.

The defendants' motion argues that the claims alleged against them are barred under the exhaustion provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, that requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in court. Mr. Rickard's response argues that the defendants did not follow Indiana Department of Correction policy in resolving his informal grievance. He also claims that defendants repeatedly obstructed the filing of grievances. For the reasons set forth below, the defendants' motion for summary judgment, Dkt. No. 16, is **granted**.

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

"At the same time, the [PLRA] requires exhaustion only of remedies that are 'available.'" *King v. McCarty,* 781 F.3d 889, 893 (7th Cir. 2015). "Prison officials may not take unfair advantage of the exhaustion requirement," and if they do, their conduct can make the remedy process "unavailable." *Dole*, 438 F.3d at 809. "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba*, 458 F.3d at 680. So here, the defendants bear the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Id.* at 681.

## III. Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Rickard as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Chris Williams was at all relevant times the Grievance Specialist at Putnamville. As Grievance Specialist, Mr. Williams is responsible for, and the custodian of, all grievances filed by Putnamville offenders. Dkt. 33-1, ¶ 3. Indiana Department of Correction ("IDOC") Policy and Administrative Procedure 00-02-301, the Offender Grievance Process, is the IDOC policy governing the grievance process and how an offender can exhaust his administrative remedies using that process. Dkt. 33-1, ¶ 6. That Offender Grievance Process was in place during the time that Mr. Rickard alleges his rights were violated.

As an inmate incarcerated with the IDOC, Mr. Rickard had access to the Offender Grievance Process to grieve actions of individual staff, including claims of deliberate indifference. The purpose of the Offender Grievance Process is to provide an administrative means by which offenders may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation and a copy of the policy is available in the law libraries. Dkt. 33-1, ¶ ¶ 7, 8.

The grievance process consists of three stages. First, an offender must attempt to resolve the grievance informally through officials at the facility by contacting staff to discuss the matter or incident set forth in the grievance and seek informal resolution. The offender must request State

Form 52897 within five (5) days of the incident. The offender must then attempt to resolve his complaint informally by contacting an appropriate staff member within five (5) business days of receiving State Form 52897. Dkt. 33-1, ¶ 9.

If the offender is unable to obtain an informal resolution of the grievance within ten (10) business days, he may submit a formal written complaint on State Form 45471 to the Grievance Specialist. The formal grievance must be submitted within five (5) business days of the date a staff member informs the offender there will be no informal resolution to the grievance; within five (5) business days of the date the offender refuses the informal resolution offered by staff; or ten (10) business days after the offender first seeks an informal resolution from staff, if he receives no answer. If an adequate formal grievance form is received, the Grievance Specialist enters the grievance, assigns the grievance a case number, and provides a receipt for the grievance to the offender. If the offender does not receive either a return of grievance form or a grievance receipt within seven business days after submitting a grievance, the offender must immediately notify the Grievance Specialist of the missing grievance, retaining a copy of the notice, so that the Grievance Specialist can investigate the matter and respond to the offender. The Grievance Specialist may accept a late grievance, or one that does not conform to the requirements set forth in the IDOC grievance policy, if an offender demonstrates good cause. Dkt. 33-1, ¶ ¶ 10-16.

If the formal written complaint is not resolved in a manner that satisfies the offender, or if he did not receive a response within twenty (20) working days of submission, the offender may file an appeal to the Department Offender Grievance Manager at IDOC's Central Office. The offender grievance appeal form is submitted by the offender to the facility Executive Assistant of Grievance (i.e. Grievance Specialist) where it is entered into the computer system and forwarded electronically to the Department Offender Grievance Manager. The Grievance Specialist also signs

the appeal, marks the date of receipt on the appeal, marks the date the appeal was forwarded to IDOC's Central Office, and provides a receipt of the appeal to the offender. In summary, exhaustion of the grievance process requires an offender to attempt an informal resolution, to file a formal grievance, and to pursue an appeal to the Department Offender Grievance Manager at IDOC's Central Office. Dkt. 33-1, ¶ ¶ 17-19.

During the time he was incarcerated at Putnamville, Mr. Rickard filed two informal grievances relating to the alleged inadequate medical treatment he was receiving for his heart condition. Dkt. 33-1, at ¶ ¶ 22-25. On July 17, 2016, Mr. Rickard filed an informal grievance naming the Health Care Unit as the department or staff he was complaining of. He complained that he was had trouble obtaining his medication when he first arrived at Putnamville. He also complained about the temperature in the dorm. This grievance was received on June 15, 2016. Defendant Wright reviewed the informal grievance on June 23, 2016, and replied that he would investigate his complaint. The informal grievance was resolved. Dkt. 33-1, ¶ ¶ 22-24; p. 41.[1]

On November 14, 2016, Mr. Rickard filed an informal grievance naming the Health Care Unit as the department of staff he was complaining of. He stated that he was given the medication Plavix as a "may carry" medication, but he did not did not realize what medication he had and ingested it and it made him sick. Dkt. 33-1, p. 42. Mark Young, Health Care Administrator at Putnamville, replied, almost two and one-half months later on February 1, 2017, that follow up medical appointments with Mr. Rickard demonstrated appropriate cardiac function and he was

---

[1] The first informal grievance was dated July 17, 2016, by the plaintiff. It was dated as received by the grievance office on June 15, 2016, and was dated resolved on June 23, 2016. Although there is an error in the dates, it does not change the fact that Mr. Rickard does not dispute that he did not file a formal grievance after filing either informal grievance.

provided a handout on the medication Plavix and CHF (congestive heart failure.) Dkt. 33-1, p. 42. The complaint was resolved as indicated in the checked box. Dkt. 33-1, at ¶ 25, ex. 4.

**B. Analysis**

The defendants have shown that the plaintiff failed to avail himself of all administrative remedies before filing this civil action. Although Mr. Rickard does not dispute that he failed to file a timely formal grievance following the filing of his informal grievances, he raises two arguments to dispute the defendants' claim that he failed to exhaust his administrative remedies.[2]

First, Mr. Rickard complains that Mark Young did not respond to his informal grievance until almost three month later despite IDOC policy that states a response is due within five (5) business days. IDOC policy anticipates situations where staff may not respond to grievances within the time frame set out in the policy. The policy allows an offender to file a formal grievance in the event that he does not receive a timely response to his informal grievance.

Specifically, IDOC states: "If the offender is unable to obtain an informal resolution of the grievance within ten (10) business days, he may submit a formal written complaint on State Form 45471 to the Grievance Specialist. The formal grievance must be submitted within . . . ten (10) business days after the offender first seeks an informal resolution from staff." Dkt. 33-1, at p. 22. Thus, if Mr. Rickard did not receive a response to his informal grievance within ten (10) business days after filing it, he was permitted to file a formal grievance. He does not dispute that he did not file a formal grievance.

---

[2] Mr. Rickard also complains that the grievance system is flawed based on the fact that on the History of Grievances for Offender Scott Rickard form, the name of Wabash Valley Correctional Facility appears rather than Putnamville Correctional Facility where he was housed when he filed the grievances. *See* dkt. 33-1, at p. 40. The defendants explain that he was housed at Wabash Valley Correctional Facility when they filed their motion for summary judgment. As such, his grievance history was simply printed at Wabash Valley. However, his history included any grievances he filed at any facility within the IDOC system. [Dkt. 38].

Second, Mr. Rickard stated that "they [defendants] have obstructed the filing of grievances time and time again." Dkt. 36, at p. 5. It is true that "[p]rison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d 809. However, a conclusory statement that the defendants obstructed the filing of grievances, without more and not made under penalty of perjury, is insufficient. The lack of specificity in Mr. Rickard's response in opposition is insufficient to create a genuine issue of material fact.

It is therefore undisputed that Mr. Rickard failed to exhaust his available administrative remedies as required by the PLRA before filing this lawsuit. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Rickard's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 62 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## Conclusion

The defendants' motion for summary judgment, Dkt. No. 32, is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/30/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel

SCOTT RICKARD 884518
WABASH VALLEY CORRECTIONAL FACILITY
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838